Judge Underwood
delivered the opinion of the Court.
This case involves the following points. 1st. What should be averred in a declaration, to charge *551 a sheriff, on his official, bond, for failing tp secute, by replevin bond, or to make the money on an execution, put into his hands for collection? And, 2d. certain instructions asked for by the plaintiff here and defendant below, and refused bj the court, ought not to have been given?
Duty of sherUevv beforethe return day of ;hl^*g.e p®op(ll.tyV¿.the county, subject to ex-within'the'1 knowledge 0f theaheriff,
To rendé?" sheriff liable' for failure tq levy, it must appear that be had know’ledge of property, subject tLn,orof0U" facts which to ascertain such property
*551 One condition of the sheriff's bond is, that be shall “well and truly execute and due return make, of all process aud precepts to him directed, and to him or his deputies delivered.” In compliance with this stipulationof the bond, it is doubtless the sheriff’s duty, virtue of the execution put into his hands, to levy upon the property of the defendant, taking a sufficiency to bring the amount of the debt, if to be had, and to do it before the return day of the execution, if not prevented by a good excuse, such as want of time, owing to the late period at which the execution came to hand, disease, &c.
It is not necessary, in this case, to say any thing relative to the duties of the officer, in returning process, as the action is founded exclusively on the failure to execute. And for the same reason, it is unnecessary to speak of the proper conduct to be observed in disposing of property after the levy. To enable a sheriff well and truly to execute a fieri facias, two things are essential. 1st. That the defendant should have property subject to execution. And, 2d. That such property should be found in the county. If the defendant has no property in the county, to which the fi.fa, is directed, subject to execution, the sheriff has nothing to do but to make due return of the process. But if there be property in the county, liable under the law, and on which a levy could legally be made, then it becomes an important matter to prescribe, with certainty and precision, the rules which shall ascertain and limit the responsibility of the officer, in case he fails to levy upon it.
What degree of diligence in the first place, must the sheriff use, to ascertain whether the defendant has property in his county? Suppose all the parties to the judgment and execution live in Hickman, where the judgment is obtained, and the execution is directed and delivered to the sheriff of Greenup, in which county *552 the defendant may have a tract of land unknown té» the sheriff, or personal property secreted, is the sheriff Greenup bound, at his peril, to find the property and levy upon it; and if he fails, shall he be made pay the debt or any part of it; for his failure? We think not. How shall he begin his inquiry ? Those who maj* have possession of personal property, held secretly for the defendant, are ostensible owners. The law presumes they are bona fide owners, until the contrary appears. Shall the sheriff go to every man in his county, and enquire for property owned by the defendant, or shall he point out particular articles of property, and enquire whether they belong to the defendant? Or how many must he inquire of? In such a case, it would be absurd and often impossible to make the inquiry of a tenth part of the population of a county, before the execution should be returned to the office whence it issued. The difficulties in regard to finding land would be equally great, and therefore, in the case supposed, we could not hold the sheriff liable for failing to execute, unless it were clearly shown that he knew of the property, could have levied on it, and did not. In cases of this kind, it is usual for the plaintiff to show property, but it is not the showing of the property by the' plaintiff that creates the liabilityof the officer; as we Conceive. If it were pointed out by another instead of the plaintiff, it would do as well. If the sheriff had knowledge, no matter how he obtained it, but it should be such knowledge, as would produce reasonable certainty, that the property belonged to the defendant in the execution. We would not require him to pay attention to eVery idle suggestion or surmise.
as to personal Jaru|erty aUtl Difference, between the evidence of knowledge,
If the parties to the judgment and execution all lived in the same county, and the execution was directed and delivered to the sheriff of that county, and the' defendant in the execution was notoriously wealthy, and possessed of a large estate, it would seem to be entire,y useless, that any one should inform the sheriff what property belonged to such defendant. But Why would it be useless? There are two reasons for it; in the first place, a violent presumption would arise in such a case, that the sheriff did know that the defendant had property within the county;'and in the second place, that reasonable diligence would enable him to *553 identify the defendant’s property, regarding the fact of open possession as prima facie evidence of Ownership, But in this case, as well as in the other, the liability of the sheriff wodld equally depend upon his knowledge of the existence of property subject to the execution, on which he could have levied, and did not.
Between, these extremes, there áre cases of endless variety, which may be imagined, but in the whole of them we conceive that the sheriff’s liability must depend upon the establishment of the fact, by positive or circumstantial evidence, that he had knowledge of property owned by the defendant, Subject to the execution, and on which he could make the levy; or a knowledge of such facts as should cause him to make exertions to find property. With such knowledge and the ability to levy on the property, by reasonable diligence and exertion, being without excuse, from want of tirhe, &c. if he failed to levy, or in the language of bis bond, to execute, he would clearly be answerable, for all damages the plaintiff might sustain by reason of his failure. If the whole debt should be lost by it, he should pay the whole. If the entire debt was not lost, but could still be collected in whole or part, he should pay damages commensurate to the injury resulting from his failure. Thus, making the liability, of the officer depend upon his knowledge, it may be said that, as he cannot positively know who is' the real owner Of the Jiundreth or thousandth part Of the property in his county, his liability is only nominal, and will be Of no practical utility.
We do not mean that his knowledge must be shOwri to amount to absolute certainty. Far from. it. We conceive that there is a plain rule of law applicable to the subject, which will fix his liability so as to secure a proper degree of responsibility, and to exempt him, at the same time, from oppressive rigor. As possession of personal property is prima facie evidence of ownership, wherever it is shown that the sheriff knew the defendant in the execution was possessed of personal property, we would require him to regard the property so possessed, as owned by the defendant; and if he fails to levy on it, we would throw the burden of proof upon him, and require that he should show that the *554 property' was not subject to the execution. Land, fiy statute,is only subject to execution, sub modo, the presumption of ownership from possession, does not operate, and, therefore, we would require, in respect to land, positive proof of the sheriff’s knowledge of title, or that it should be shown and designated by the plaintiff, his attorney or agent. No hardship can accrue to a sheriff, under flus doctriné, for he can protect himself against an action of trespass, by empannelling a jury to try the right of property.
Sheriff liable, Unless he make reasonable search after the property of ctef’t.
The foregoing observations present our views of the proper foundation for responsibility, on Ihe part of the sheriff. But there is a class of cases coming within the' operation of the principle, and which may seem not to be embraced by it, at first view. They are cases in which, from the knowledge of certain facts, the sheriff ought to make exertions to ascertain and find the property on which to levy, if there be property in his county, subject to the execution. For example; if the sheriff knows the defendant, and where he resides, it is his duty to go to his house in pursuit of the property. If he knows the defendant, but does not know where he resides, yet, if he could ascertain the place of residence, by reasonable inquiry, and did not, he ought to be held responsible, provided it can be shown that property to satisfy the execution, or part thereof, could be had by going to the defendant’s residence. In these and similar cases, the officer having a knowledge of such facts as would create a presumption, that by proper diligence he might secure the debt, he should be answerable for failing to exert himself. He must not expect defendants to bring their property to him; he must hunt up their property, and is answerable if he does not, when his knowledge of facts is sufficient to put him on the look out.
The whole of the foregoing considerations may be summed up in this rule, that sheriffs are required to use proper diligence in the execution of the duties of their offices; and if by proper diligence they could secure a plaintiff’s debt, and should fail to do it, they are responsible. The reasoning which we have entered into, was designed to ascertain and- limit the nature of the diligence to be used, and the principles upon which it is required.
The averments requisite in- declaration, to charge sheriff on his official bond, for failing to levy execution.
Since the statute of 1821, 1 Dig. " 504, sheriff bound to levy upon interest of mortgagor, and responsible for failure. Incomplete replevy bond, in hand writing ofdeputy sheriff, admitted as evidence, in action vs. principal, to prove that execution was in the hands of depnty, and when.
From the view of the subject which we have taken, It results that a declaration against a sheriff, for breach .of his official bond, in failing to execute a Ji-fa. should aver that the defendant in the execution had property liable to the execution, situated in the eojunty, out of which the debt or part thereof, might have been made, and that the sheriff or his deputy, into whosehands the execution may have been placed, could, while the execution was in his hands, and in full force, by the use .of proper diligence on his part, have levied thereon». If, the sheriff has any good excuse for failing to make the. levy, it is his duty .to set it forth by plea. Testing the-declaration in the present case, by the principles here laid down, although it is, in form, not strictly correct, yet in substance we think it good. The different counts aver that the defendant neglected and failed to do his duty, whereby the debt was lost. This averment is made after seting. out that Gower, the defendant in the execution, lived in the county, and had property sufficient to pay the debt. The sheriff could not have neglected and failed in his duty, unless by proper diligence, while .the execution was in force and in his hands, he could have secured the debt, or part thereof. We will not, therefore, after verdict, set aside a judgment, to correct mere matters of form. It follows from this, that the court did not err in refusing to instruct the jury to disregard the first and third counts.
The defendant read in evidence, a mortgage executed by Gower, and moved the-court to instruct the jury that he was not bound to levy the execution on the mortgaged property. The court refused the instruction and we think, properly. The mortgage bore date 3d May, 1823, after the passage of the act subjecting the interest of mortgagors to sale under execution, and the sheriff was as much bound to sell that interest, as be was the absolute and fee simple title.
We perceive no error in admitting the replevin bond prepared in the hand writing of Freeman, a deputy of the defendant, to be read in evidence. It was a circumstance from which a legitimate inference might be drawn, that the execution had been placed, in Freeman’s hand; and the time he had it, might also be ascertained, by the incomplete replevin bond. The replevin *556 bond was obviously not completed, so that the judgment merged in it, and was no satisfaction of the execution. It was not signed by any surety of Gower, and not attested by the officer.
Monroe, for plaintiff; Caperton, for defendant.
J udgment affirmed with costs.